224 N.J. Super. 328 (1988)
540 A.2d 861
HIGHGATE DEVELOPMENT CORP., PLAINTIFF-APPELLANT,
v.
MICHAEL KIRSH AND MARCIA KIRSH, HIS WIFE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 16, 1987.
Decided April 8, 1988.
*329 Before Judges GAULKIN, GRUCCIO and D'ANNUNZIO.
Mitchell S. Camp, argued the cause for appellant.
Jack S. Zakim, argued the cause for respondents.
The opinion of the court was delivered by GAULKIN, J.A.D.
Plaintiff Highgate Development Corp. (Highgate) brought this action to confirm an arbitration award entered against defendants Michael and Marcia Kirsh. On motion for summary judgment, the Law Division judge dismissed the complaint by an order determining that
the American Arbitration Association was not conferred with jurisdiction over the parties Highgate Development Corp. and Michael and Marcia Kirsh, as a result of the residential construction contract between those parties, which provided for an alternate means of arbitration.
By a separate order, the judge awarded the Kirshs costs and attorney's fees totalling $900 pursuant to R. 4:58. Highgate appeals from both orders.
*330 The dispute arises out of a May 1982 contract under which Highgate agreed to construct a one family residence for the Kirshs. Paragraph 18 of the printed form contract provided:
Any disagreement, dispute, controversy or claim rising out of or relating to this Contract or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. Judgment upon the award rendered by the Arbitrator[s] may be entered in any Court having jurisdiction thereof.
Attached to the printed contract was a three-page typewritten rider with 17 additional paragraphs. Paragraph 10 of the rider provided as follows:
Should any disputes arise respecting the interpretation or the meaning of the architect's plans, specifications or any of the terms contained in this Agreement, or with respect to the reasonable value of any extra work, etc., the parties agree to arrange for an immediate settlement conference with their respective attorneys, and make a sincere attempt to resolve their differences, so that construction can continue in an expeditious manner. In the event the parties and their respective attorneys are not able to amicably resolve the problem, the parties further agree that the dispute shall be referred for final determination to two (2) competent persons, as arbitrators, one of whom shall be employed by the Owners, and the other by the Contractor, and if the two arbitrators disagree, the dispute shall then be submitted to a referee or umpire to be named by the two arbitrators, whose decision shall be final and conclusive. Thereafter, the decision of the arbitrators will be binding as per Paragraph 18 of the Contract.
On May 12, 1983 Highgate filed a demand for arbitration with the American Arbitration Association (AAA) pursuant to paragraph 18. Highgate alleged that it had "duly performed substantially all of the construction work required of it," that a certificate of occupancy had been issued in December 1982 and that the Kirshs had taken occupancy. Highgate claimed $18,547.90 as the unpaid balance due on the base contract price and $37,307 for authorized extras.
Although the record before us is not complete, it appears that counsel for both parties submitted letter briefs to the AAA addressing the question whether arbitration should proceed under paragraph 18 of the contract or paragraph 10 of the rider. Counsel for the Kirshs argued that "there is no agreement to submit this dispute to the [AAA]" and asked for such a ruling from the arbitrator:

*331 In determining whether or not there is an agreement between the parties to submit this claim to your association I only ask that you review the petitioner's demand for arbitration with specific reference to the list of charges for extras and make a determination based on the clear language in paragraph one (1) and ten (10) of the Rider.
Based on the parties' written submissions, the AAA arbitrator determined that he had jurisdiction to decide the dispute. In her October 5, 1983 letter advising of that ruling, the AAA administrator instructed the parties that they "may agree to appoint party-appointed Arbitrators to serve in addition to [the AAA arbitrator], and are to advise the [AAA] of their agreement to do so by October 12, 1983." Counsel apparently never responded to that invitation.
The Kirshs filed a general denial to the arbitration demand on October 13, 1983. Their response also set forth 13 affirmative defenses, all but one of which addressed the merits of the Highgate claim. The first affirmative defense was:
The construction contract (paragraph ten (10) of Rider) provided for a specific procedure to arbitrate any disputes, outside of the American Arbitration Association which has no jurisdiction over the within alleged dispute.
The response also incorporated a demand for discovery.
On November 7, 1983 the Kirshs filed a counterdemand for arbitration, alleging that Highgate had breached its contract, "resulting in additional expenses and damages" to the Kirshs. They demanded an award in their favor in the amount of $42,502. On February 29, 1984, however, counsel for the Kirschs gave notice to the AAA that they withdrew the counterdemand for arbitration because they had determined that Highgate and its principal were judgment-proof. Counsel advised, however, that he incorporated in his response to the Highgate demand all of the defenses set forth in the counterdemand.
The arbitration went forward. While we do not have the record of the proceeding, we are told that the hearings occupied five full days, during which both parties presented extensive proofs, including documentary evidence and expert testimony. The arbitrator issued his award on January 13, 1986. He *332 awarded Highgate a total of $31,304, but directed that Highgate and its principal furnish releases of liens filed by Highgate creditors totalling $51,134.14.
The action to confirm the arbitration award was filed on March 21, 1986. As already noted, the complaint was dismissed by the Law Division judge upon a finding that the AAA did not have jurisdiction to hear and determine the dispute. Highgate appeals.
Although we have serious doubt about the soundness of the trial judge's determination that the arbitration should have proceeded under paragraph 10 of the rider rather than paragraph 18 of the form contract, we find it unnecessary to resolve that question. We conclude, rather, that the Kirshs' election to proceed with the paragraph 18 arbitration constituted a waiver of any right they might have had to demand arbitration under paragraph 10.
New Jersey law has long recognized that a party can waive, by conduct or otherwise, any objection he might have to an arbitrator's jurisdiction. The background and scope of that principle were explored in N.J. Manufacturers Insurance Co. v. Franklin, 160 N.J. Super. 292 (App.Div. 1978). There we stated that "[e]ven in the absence of a contractual submission of an issue to arbitration, a party may by conduct or agreement waive his legal right to judicial determination," whereupon "objection to the arbitrator's jurisdiction is no longer viable." Id. at 298. Whether there has been a waiver "is dependent upon the course elected by the [objecting party] and the facts relating to the nature and degree of its participation in the arbitration proceeding." Id. at 299. "[M]ere participation" in the arbitration does not "conclusively bar" a party from challenging the arbitrator's jurisdiction; in particular, participation "does not dictate a finding of waiver" where the party gives timely notice of his objection to the arbitrator's jurisdiction. Id. at 300. While it is preferable for a party claiming that an issue is beyond an arbitrator's jurisdiction to seek an injunction of the arbitration, failure to do so will not alone justify a finding *333 of waiver. Id.; accord In re Matter of Arbitration between Grover, 80 N.J. 221, 230 (1979).
The threshold question here, not directly addressed in our prior case law, is whether timely notice of the objection to the arbitrator's jurisdiction standing alone precludes a finding of waiver. We are satisfied that, just as mere participation in the arbitration does not dictate a finding of waiver, mere assertion of an objection does not dictate a finding of non-waiver. In both situations, the determination as to waiver is dependent upon all of the facts relating to the nature and degree of the objecting party's participation in the arbitration proceeding. Id. at 299.
It is not just analytic symmetry which justifies that conclusion, but considerations of policy as well. The principle of waiver is invoked to assure that a party may not get two bites of the apple: if he chooses to submit to the authority and jurisdiction of an arbitrator, he may not disavow that forum upon the return of an unfavorable award. That important policy would be subverted if a party could enter a nominal objection to the arbitrator's jurisdiction, submit himself fully to the arbitration and still retain the option to demand a new hearing if he does not like the outcome of the arbitration. Reservation of an objection to the arbitration surely is a relevant fact in determining waiver. But that fact alone cannot be dispositive.
N.J. Manufacturers suggests that waiver requires a showing of an intentional relinquishment of the right to challenge the arbitrator's jurisdiction. 160 N.J. Super. at 301. We find that definition too limited. As Chief Justice Weintraub noted in an analogous setting, "waiver" is a term "used loosely to embrace a number of concepts ... it would be a mistake to apply a definition, useful for one purpose, to a situation for which it was not intended." Merchants Ind. Corp. v. Eggleston, 37 N.J. 114, 130 (1962). The relevant question here is not only whether the objecting party intentionally relinquished his objection to the arbitration, but whether he so conducted himself that he *334 should be held to have made a binding election. Employing the language of Merchants, "waiver" really means that the objecting party has made an election which is binding "not because he wants it to be, but because the law makes it so." Id. at 131.
We find that the Kirshs made such an election here. They filed a full response on the merits of the Highgate claim. They filed their own counterdemand for AAA arbitration, which was subsequently withdrawn for reasons wholly unrelated to any challenge to the arbitrator's jurisdiction. They proceeded from discovery through a full litigation of all of the meritorious issues over a two year period, during which they never sought to abort the arbitration by obtaining a judicial determination that the matter was not arbitrable under paragraph 18 of the contract.
That conduct must be evaluated in light of the fact that the challenge the Kirshs made was not as to arbitrability but solely as to the arbitration procedure. The paragraph 18 arbitration was only marginally different from the paragraph 10 arbitration to which the Kirshs claimed to be entitled. Their entitlement to arbitrate under paragraph 10 was unclear at best. Cf. N.J. Manufacturers, 160 N.J. Super. at 301 ("clear and unequivocal" proof of waiver required where lack of arbitrability "is clear on the face of the contract.") In his letter brief to the AAA challenging its jurisdiction, the Kirshs' counsel argued that rider paragraph 10 was designed to assure that "the parties would select their own arbitrators" and "to overcome the onerous burden that paragraph eighteen (18) of the main Contract subjected the parties to." In fact the AAA specifically invited the parties to appoint their own arbitrators to serve in addition to the AAA arbitrator. The Kirshs apparently made no effort to avail themselves of that opportunity, nor did they seek judicial intervention to alleviate the unspecified "onerous burden" which paragraph 18 assertedly imposed.
The Kirshs' request that the arbitrator decide the jurisdictional question, moreover, could be said to have brought that question within the scope of the matters which the arbitrator *335 could properly decide. The factual setting is similar to that in Grover, 80 N.J. at 221, which involved a demand made by Grover upon his insurance carrier for arbitration of a dispute concerning uninsured motorist coverage. The policy called for arbitration to determine (1) if an alleged no-contact "hit and run" motorist was responsible for the accident, and (2) if so, the amount due Grover for his injuries. The policy did not give the arbitrator authority to decide questions of coverage. The insurer, however, contended before the arbitrator that its policy did not provide coverage. Id. at 226. The arbitrator rejected that contention and entered an award in favor of Grover. The Law Division confirmed the award. The Appellate Division affirmed over a dissent which argued that the arbitrator had no jurisdiction to determine the coverage question. Id. at 228. The Supreme Court, speaking through Justice Schreiber, held that the insurer's submission of the coverage question to the arbitrator, without objection by Grover, implied their mutual agreement to have the arbitrator decide that question and thus forego a judicial determination:
Coverage, having been raised by [the insurer] and tried before the arbitrator without objection by [Grover], thereby came within the scope of those matters which the arbitrator could properly decide. Cf. R. 4:9-2 which states that "`[w]hen issues not raised by the pleadings and pretrial order are tried by consent or without the objection of the parties, they shall be treated in all respects as if they had been raised in the pleadings and pretrial order.'" The parties had the right to modify the arbitrator's authority by mutual agreement and to add another issue for his determination. That is what occurred here. [Id. at 229]
Essentially the same analysis was employed by the California Supreme Court in Application of O'Malley, 48 Cal.2d 107, 308 P.2d 9 (1957), in holding that a voluntary submission to an arbitrator of a challenge to his jurisdiction barred relitigation of that question in the court. The court there said that, while the arbitrability of the dispute could have been judicially determined in a challenge to a judgment confirming the award, that opportunity was lost when the objecting party presented the jurisdictional question to the arbitrator. Although the objecting party had purported to preserve its jurisdictional challenge, *336 the court held that it "may not agree to arbitrate a question and then, if the decision goes against it, litigate the question in another proceeding." 308 P.2d at 11. Cf. Harmuth Eng. Co. v. Franklin Univ. Bldg. Corp., 178 N.J. Super. 380, 383-384 (App.Div. 1981) (party not estopped from challenging arbitration where it "objected to the hearing proceeding on the basis of procedural jurisdiction, and left.")
Realistically viewed, then, the Kirshs' election to proceed with the paragraph 18 arbitration must be regarded as their voluntary submission of the entire dispute to the arbitrator, albeit with a hope or expectation that they could have a second bite at the apple if they were dissatisfied with the first. Indeed, counsel for the Kirshs candidly acknowledged at oral argument that he regarded the law as affording the "luxury" of proceeding to arbitration and either accepting or rejecting the arbitrator's award. We are persuaded that the law does not afford that luxury. We find, rather, that the nature and degree of the Kirshs' participation in the arbitration were such that they must be deemed to have waived their right to a judicial determination of the arbitrator's jurisdiction.
The summary judgment is reversed. The complaint is restored and the matter is remanded to the Law Division for all further proceedings.