NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5624-17T3

LIBERTY MUTUAL INSURANCE
COMPANY, a corporation, and
EUGENE JERINSKY,

      Plaintiffs-Appellants,

v.

PENSKE TRUCK LEASING, CO.,
a company, corporation and/or other
business entity,

      Defendant,

and

CEVA FREIGHT, LLC, a company,
corporation and/or other business
entity, and ALBERT KIKA,

      Defendants-Respondents.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **May 23, 2019** |
| **APPELLATE DIVISION** |

Submitted March 12, 2019 – Decided May 23, 2019

Before Judges Yannotti, Rothstadt and Gilson.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3377-17.

Clark & Di Stefano, PC, attorneys for appellants (Robert P. Clark, on the briefs).

Marks O'Neill O'Brien Doherty & Kelly PC, attorneys for respondents (Michael J. Notartomas, on the brief).

The opinion of the court was delivered by

GILSON, J.A.D.

Section 9.1 of the New Jersey Automobile Reparation Reform Act (the No-Fault Act), N.J.S.A. 39:6A-1 to -35, provides insurers, which have paid personal injury protection (PIP) benefits to their insured, with the statutory right to seek reimbursement against certain tortfeasors. N.J.S.A. 39:6A-9.1. If the tortfeasor is insured, the determination whether the insurer that paid the PIP benefits is entitled to recover those payments and the amount of the recovery is by agreement of the parties, and, if they are unable to agree, by arbitration. Ibid.

In this appeal, the non-PIP insurer disputes whether its insured was a tortfeasor. Thus, the question presented is whether that dispute must be arbitrated under Section 9.1 of the No-Fault Act or resolved in a court proceeding. We hold that the issue of whether a party is a tortfeasor is to be resolved at arbitration when that issue involves factual questions as to the fault or negligence of the insured.

Accordingly, on this appeal we reverse the Law Division order dated June 4, 2018, which denied the motion of plaintiff Liberty Mutual Insurance Company (Liberty or plaintiff) to compel defendant CEVA Freight, LLC

(CEVA), a self-insured company, to arbitrate Liberty's demand for reimbursement of PIP benefits. We also reverse a July 20, 2018 order denying Liberty's motion for reconsideration. We remand with the direction that the Law Division enter an order compelling CEVA and Liberty to arbitrate both whether Liberty is entitled to the reimbursement and the amount of the reimbursement. Thus, the arbitrator will determine whether the driver of the truck, which was owned and self-insured by CEVA, was a tortfeasor.

I.

The basic facts concerning the underlying automobile accident are not in dispute. At approximately 4:45 a.m. on October 7, 2016, a tractor-trailer truck driven by Albert Kika and a pickup truck driven by Eugene Jerinsky were involved in a collision. Kika was attempting to back the truck he was driving into a car dealership located off the southbound lanes of Route 9 in Freehold. While backing into the entrance to the dealership, Kika's truck blocked the southbound lanes of Route 9. As Kika was maneuvering his truck into the driveway, Jerinsky was driving his pickup truck in the right southbound lane of Route 9 and his pickup truck struck the trailer of Kika's truck.

A police accident report stated that Kika "failed to yield [the] right-of-way [to] traffic" while attempting to back his tractor-trailer into the dealership

3

driveway. A witness gave a statement and reported that he was driving his vehicle in the left southbound lane, saw the tractor-trailer blocking the roadway, and was able to stop. The witness then saw the pickup truck hit the trailer. The police report also stated that there was visible damage to the side of the trailer and the front end of the pickup truck.

Jerinsky had automobile liability insurance provided by Liberty. Kika was employed by CEVA, and CEVA owned and self-insured the truck driven by Kika. CEVA does not maintain and is not required to maintain PIP coverage because the truck was a commercial vehicle. See Empire Fire & Marine Ins. Co. v. GSA Ins. Co., 354 N.J. Super. 415, 417 (App. Div. 2002) ("Commercial vehicles are not within the definition of 'automobile' as used in N.J.S.A. 39:6A-4 and, therefore, are not statutorily required to maintain PIP coverage."). Following the accident, Jerinsky received medical treatment and applied to Liberty for PIP benefits. Liberty opened a PIP claims file and began paying Jerinsky's medical providers. Jerinsky also applied for automobile property damage benefits. Liberty paid both types of benefits on behalf of Jerinsky.

In August 2017, Liberty requested reimbursement from CEVA for the PIP benefits it had paid on behalf of Jerinsky. Liberty also informed CEVA that if it would not agree to provide reimbursement, Liberty demanded arbitration of

its right to reimbursement of the PIP benefits. CEVA, through its third-party administrator, denied Liberty's request and refused to arbitrate the issue, contending that Kika was not at fault for the accident.

In September 2017, Liberty and Jerinsky filed a complaint against CEVA and Kika. Liberty demanded reimbursement of the PIP benefits it had paid on behalf of Jerinsky. Liberty also demanded arbitration of its claim for reimbursement of the PIP benefits. In addition, Liberty and Jerinsky sought automobile property damages directly from defendants for the alleged total loss of Jerinsky's vehicle.

CEVA and Kika filed an answer and CEVA admitted that it was self-insured. Liberty again requested CEVA to consent to arbitration, but CEVA continued to refuse to arbitrate Liberty's PIP benefits claim. Liberty, therefore, filed a motion to compel CEVA to arbitrate the PIP benefit reimbursement claim citing N.J.S.A. 39:6A-9.1. CEVA opposed that motion, contending that its driver, Kika, was not a tortfeasor and the question of Kika's fault for the accident should be decided in a court proceeding and not at arbitration.

After hearing oral arguments, the trial court denied Liberty's motion. The court read its decision into the record on June 1, 2018, and supplemented those reasons in a written rider to its order. The court reasoned that Section 9.1 of the

No-Fault Act used the term "tortfeasor," but the statute did not define that term. The trial court went on to reason that before Liberty could compel arbitration of the amount of its reimbursement, there had to be a determination that CEVA's insured was a tortfeasor. Consequently, the court held that the issue of Kika's fault for the accident would be determined in a court proceeding, either by a judge or jury. Thereafter, if Kika was found to be a tortfeasor, the amount of reimbursement Liberty was entitled to receive would be determined at arbitration in accordance with N.J.S.A. 39:6A-9.1. Thus, in an order dated June 4, 2018, the trial court denied Liberty's motion to compel CEVA to arbitration.

Liberty moved for reconsideration. The trial court again heard oral argument, but on July 20, 2018, denied reconsideration. The trial court again explained the reasons for its decision on the record.

II.

Liberty now appeals from the orders entered on June 4, 2018 and July 20, 2018, denying its motion to compel CEVA to arbitration. Liberty has a right to appeal those orders because Rule 2:2-3 allows appeals from orders granting or denying arbitration.

The central issue on this appeal is whether Section 9.1 of the No-Fault Act, N.J.S.A. 39:6A-9.1, compels arbitration of the question whether a party is

a tortfeasor when that issue is disputed. That issue requires us to construe the statute and, therefore, is a question of law that we determine de novo. Kocanowski v. Twp. of Bridgewater, 237 N.J. 3, 9 (2019) (citing State v. Fuqua, 234 N.J. 583, 591 (2018)).

## A.

To put this issue in context, we will briefly review the No-Fault Act and some of its relevant amendments. In 1972, the Legislature enacted the No-Fault Act to eliminate inefficient common-law subrogation litigation among insurers by "requiring automobile insurers to provide 'primary coverage' and 'pay the medical expenses of [their] insured.'" Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 382-83 (2016) (alteration in original) (quoting State Farm Mut. Auto. Ins. Co. v. Licensed Beverage Ins. Exch., 146 N.J. 1, 6 (1996)).

As originally enacted, the No-Fault Act provided that PIP insurers would be "subrogated to the rights of any party to whom [they] make[] [PIP] payments," through "'inter-company arbitration or by inter-company agreement' with the tortfeasor's insurer." Id. at 383 (alterations in original) (quoting L. 1972, c. 70, § 9). That subrogation provision, however, became "inoperative" two years after the effective date of the No-Fault Act. Ibid. (citing L. 1972, c. 70, § 9).

In 1981, our Supreme Court addressed the question whether, following the expiration of the No-Fault Act subrogation provision, an insurer had a common-law right to subrogation. Aetna Ins. Co. v. Gilchrist Bros., Inc., 85 N.J. 550, 561-62, 566-67 (1981). The Court held that insurers had such a subrogation right, but also held that the insurers could not seek reimbursement because of other provisions of the No-Fault Act. Id. at 566-67. In that regard, the Court pointed out that another section of the No-Fault Act stated that "[e]vidence of the amounts collectible or paid pursuant to [PIP coverage] is inadmissible in a civil action for recovery of damages for bodily injury by such injured person." Id. at 562 (quoting N.J.S.A. 39:6A-12). Thus, the Court reasoned that the No-Fault Act had extinguished an insured person's right to maintain an action for PIP payment and, as a result, the insurer had no right to reimbursement through subrogation. Ibid.

The Legislature responded in 1983 by enacting Section 9.1. N.J.S.A. 39:6A-9.1; L. 1983, c. 362, § 20. That provision allows automobile insurers to recover PIP benefits through reimbursement against certain tortfeasors. Thus, Section 9.1 created a right of reimbursement belonging to the insurer and not dependent on a right of subrogation. Johnson, 226 N.J. at 383-84 (citing State Farm, 146 N.J. at 9). In 2011, Section 9.1 was amended to make clear that an

A-5624-17T3

insurer's reimbursement right was subject to any personal injury claim by the insured and that the reimbursement could be paid only after satisfaction of that personal injury claim.  N.J.S.A. 39:6A-9.1; L. 2011, c. 11, § 1.

Currently, subsection (a) of Section 9.1 provides that an insurer that has paid PIP benefits as a result of an accident in New Jersey has a right to recover those benefits from any "tortfeasor" that is not required to maintain PIP protection or did not maintain PIP protection.  Specifically, the statute states:

> An insurer, health maintenance organization or governmental agency paying benefits pursuant to subsection a., b. or d. of [N.J.S.A. 39:6A-4.3], personal injury protection benefits in accordance with [N.J.S.A. 39:6A-4 or -10], medical expense benefits pursuant to [N.J.S.A. 39:6A-3.1] or benefits pursuant to [N.J.S.A. 39:6A-3.3], as a result of an accident occurring within this State, shall, within two years of the filing of the claim, have the right to recover the amount of payments from any tortfeasor who was not, at the time of the accident, required to maintain personal injury protection or medical expense benefits coverage, other than for pedestrians, under the laws of this State, including personal injury protection coverage required to be provided in accordance with [N.J.S.A. 17:28-1.4], or although required did not maintain personal injury protection or medical expense benefits coverage at the time of the accident.
>
> [N.J.S.A. 39:6A-9.1(a).]

Subsection (b) of Section 9.1 goes on to state that if the tortfeasor is insured, the reimbursement is to be made by the insurer.  N.J.S.A. 39:6A-9.1(b).

This subsection also states that the determination of whether the insurer that paid PIP benefits is entitled to recover and the amount of the recovery shall be made by agreement of the parties, or if they cannot agree, in arbitration. In that regard, the statute states:

> In the case of an accident occurring in this State involving an insured tortfeasor, the determination as to whether an insurer, health maintenance organization or governmental agency is legally entitled to recover the amount of payments and the amount of recovery, including the costs of processing benefit claims and enforcing rights granted under this section, shall be made against the insurer of the tortfeasor, and shall be by agreement of the involved parties or, upon failing to agree, by arbitration. Any recovery by an insurer, health maintenance organization or governmental agency pursuant to this subsection shall be subject to any claim against the insured tortfeasor's insurer by the injured party and shall be paid only after satisfaction of that claim, up to the limits of the insured tortfeasor's motor vehicle or other liability insurance policy.
>
> [N.J.S.A. 39:6A-9.1(b).]

In summary, Section 9.1 "creates a direct right of reimbursement, not a subrogation right." Unsatisfied Claim & Judgment Fund Bd. v. N.J. Mfrs. Ins. Co. (UCJF), 138 N.J. 185, 191 (1994). The statute "allows PIP carriers to recover not from other PIP carriers but from non-PIP carriers and uninsureds." Ibid. If there is a non-PIP carrier involved, the two insurers are either to agree on the reimbursement claim or, if they cannot agree, the dispute is to be resolved

in arbitration. N.J.S.A. 39:6A-9.1(b). With this statutory overview, we turn to the issue in this case.

B.

CEVA is self-insured and, as the owner of a commercial vehicle, it was not required to carry PIP coverage. See Empire Fire, 354 N.J. Super. at 417 (first citing N.J.S.A. 39:6A-4; and then citing N.J.S.A. 39:6A-2(a)). As a self-insured entity without PIP coverage, CEVA is subject to N.J.S.A. 39:6A-9.1. Liberty Mut. Ins. Co. v. Thomson, 385 N.J. Super. 240, 243 (App. Div. 2006) ("Under the No-Fault Law, our courts have consistently held that 'a self-insurer's coverage obligations are co-extensive with the obligations of those possessing liability policies.'" (citation omitted) (quoting Ryder/P.I.E. Nationwide, Inc. v. Harbor Bay Corp., 119 N.J. 402, 410 (1990))).

Liberty argues that because CEVA's status as a self-insured entity brings it within the ambit of N.J.S.A. 39:6A-9.1(b), CEVA is required to arbitrate the issue of whether Kika was negligent and, therefore, a "tortfeasor," to determine whether Liberty is "legally entitled" to reimbursement of PIP benefits paid on behalf of Jerinsky. CEVA, in contrast, contends that Kika's negligence is a legal issue to be determined in a court proceeding and that N.J.S.A. 39:6A-9.1(b) does

11

not apply to it until Kika's status as a "tortfeasor" is established. We agree with Liberty and reject the position of CEVA.

As noted earlier, the question presented is a question of statutory interpretation. Specifically, if there is a dispute concerning whether one of the drivers was at fault, did the Legislature intend that the dispute would be resolved in arbitration?

When construing a statute, our goal is "to discern and implement" the Legislature's intent. State v. Smith, 197 N.J. 325, 332 (2009). The language of the statute provides "the best indicator of that intent." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citing Frugis v. Bracigliano, 177 N.J. 250, 280 (2003)). "We ascribe to the statutory words their ordinary meaning and significance[.]" Ibid. (citing Lane v. Holderman, 23 N.J. 304, 313 (1957)). Furthermore, a court may not "rewrite a plainly-written" statute or "presume that the Legislature intended something other than that expressed by way of the plain language." Ibid. (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)).

The language of N.J.S.A. 39:6A-9.1(b) is clear on its face when it states that "the determination as to whether an insurer . . . is legally entitled to recover the amount of payments and the amount of the recovery" shall be by agreement, or, "upon failing to agree, by arbitration." The plain meaning of the words

12

"legally entitled to recover" includes disputes about whether the non-PIP insurer's insured was a tortfeasor. Moreover, the phrase "the amount of payment" is a separate and additional concept from "legally entitled to recover," thereby further clarifying that the first phrase refers to disputes over whether an insured is a tortfeasor.

We also consider the legislative intent of the No-Fault Act in construing Section 9.1. See Haines v. Taft, 237 N.J. 271, 283-84 (2019). Interpreting Section 9.1 to include arbitration of factual disputes over whether an insured is a tortfeasor is consistent with and helps promote the goal of the No-Fault Act, which "is to avoid excessive litigation related to accidents and insurance[.]" UCJF, 138 N.J. at 205. "[T]he reimbursement right conferred by [S]ection 9.1 encompasses all tortfeasors that are not subject to the No-Fault law[,]" and was intended to alleviate the court system of reimbursement litigation by requiring claims to be arbitrated. State Farm, 146 N.J. at 14-15. See also Haines, 237 N.J. at 283-84, 290 (explaining that a major legislative intent of the No-Fault Act was to contain costs, and one way to reduce costs was to limit litigation in favor of arbitration).

CEVA and the trial court focused on the word "tortfeasor" and reasoned that the statute was inapplicable to CEVA until Kika is determined to be the

"tortfeasor." To accept that argument, the Law Division would first need to adjudicate the factual dispute whether Kika was negligent. That proceeding could well involve a protracted trial. Such an interpretation would undermine the statutory scheme by creating an extra and potentially lengthy step in what the Legislature intended to be an expeditious and efficient process.

Thus, the statutory provision has to be read in full context. Such a construction is also consistent with well-established case law. In 1996, our Supreme Court ruled that the phrase "any tortfeasor" in the No-Fault Act was intended to have "a broad meaning" encompassing "all tortfeasors that are not subject to the No-Fault law." State Farm, 146 N.J. at 13-15.

CEVA relies on several cases for the proposition that a "purely legal" question of who is a tortfeasor should not be resolved through arbitration. See AAA Mid-Atlantic Ins. of N.J. v. Prudential Prop. & Cas. Ins. Co., 336 N.J. Super. 71 (App. Div. 2000); Coach USA, Inc. v. Allstate N.J. Ins. Co. 354 N.J. Super. 277 (App. Div. 2002); Hanover Ins. Co. v. Borough of Atl. Highlands, 310 N.J. Super. 568 (App. Div. 1998). Each of these cases is distinguishable from this case.

The cases cited by CEVA are based on the general principle that purely legal questions should generally be decided by a court. For example, in AAA

14

Mid-Atlantic, we addressed the issue whether parents who served alcohol to their adult child, who subsequently was involved in a car accident, were "tortfeasors" under N.J.S.A. 39:6A-9.1. 336 N.J. Super. at 73. Noting that the case involved "a question of a statutory defense" under the social host liability statute, we held that a court, rather than arbitrators, should decide that purely legal question. Id. at 77.

Similarly, in Coach USA, we addressed the issue of whether insurers could seek automobile PIP reimbursement from insurers whose policies covered bus PIP payments only. 354 N.J. Super. at 278. We rejected the idea that the issue should be resolved in arbitration, declining to subject a decision of statutory interpretation to arbitration. Id. at 282. Instead, we held that the issue presented a purely legal question that should be decided by a court. Ibid.

Finally, the issue in Hanover Insurance Co. was whether a public entity tortfeasor must reimburse a PIP carrier pursuant to Section 9.1. 310 N.J. Super. at 570. After determining that the appeal presented a "single legal question" with "no material facts in dispute," we held that public entity tort immunity applies to actions brought under Section 9.1. Id. at 570, 572.

Here, the question whether Kika was a tortfeasor does not present a purely legal question. Instead, it presents a factual issue. Accordingly, that issue is

appropriate for arbitration. Again, the language of the statute itself includes the determination as to whether the insurer seeking PIP reimbursement "is legally entitled to recover." N.J.S.A. 39:6A-9.1(b). Consequently, the statute calls for a determination of liability through agreement of the parties or arbitration.

The orders denying Liberty's motion to compel arbitration are reversed. The matter is remanded with the direction that the trial court enter an order compelling CEVA to arbitrate all issues related to Liberty's request for reimbursement of PIP benefits.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5624-17T3